IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-95-142-49 |
| | § | CIVIL ACTION NO. H-04-715 |
| VIRGINIA RIOJAS | § | |
| | § | |
| | § | |
| Defendant-Movant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C.

§ 2255 is Movant Virginia Riojas' § 2255 Motion to Vacate, Set Aside or Correct Sentence

(Document No. 5265),[1] and the Government's Answer and Motion for Summary Judgment

(Document No. 5375).  After reviewing the parties' submissions, the record of the proceedings

before the District Court in the underlying criminal case, and the applicable case law, the Magistrate

Judge RECOMMENDS, for the reasons set forth below, that the Government's  Motion for

Summary Judgment (Document No. 5375) be GRANTED, that Movant's § 2255 Motion to Vacate,

Set Aside or Correct Sentence (Document No. 5265) be DENIED, and that this § 2255 proceeding

be DISMISSED.

---

[1] Virginia Riojas' Motion to Vacate, Set Aside or Correct Sentence can be found at
Document No. 1 in Civil Action H-04-715, and at Document No. 5265 in Criminal Action H-95-142.
References hereafter will be to the criminal document numbers unless otherwise indicated.

I.    **Procedural History**

Movant Virginia Riojas ("Riojas"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255.  This is Riojas' first attempt at § 2255 relief.

On October 10, 1996, Riojas and seventy-eight co-defendants were charged in a 197 count sixth superseding Indictment, which arose out of a drug-trafficking organization headquartered in Starr County, Texas.  (Document No. 19).  The superceding indictment charged various defendants with narcotics distribution, money laundering, conspiracy to evade currency reporting requirements, failure to file tax forms, aiding and abetting the use of a communication facility, aiding and abetting travel in foreign and interstate commerce, conspiracy to travel in aid  of a racketeering enterprise, conspiracy to obstruct justice, obstruction of  justice, and continuing criminal enterprise. Riojas pleaded guilty, pursuant to a written Rule 11(e)(1)(B) Plea Agreement, to possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2 (count 126) and money laundering conspiracy, in violation of 18 U.S.C. § 1956(g) and (h) (count 5). Under the written Plea Agreement (Document No. 2697), Riojas waived her right to a direct appeal, agreed to cooperate with the Government as the written plea agreement provided for a potential sentencing departure under Section 5K1.1 of the Sentencing Guidelines, and agreed to make a full and  complete  disclosure  concerning  assets  subject  to  forfeiture  by  the  Government.    The Government, in exchange for Riojas' plea, agreed to file a motion for departure under § 5K1.1 if Riojas complied, as determined by the United States, with her agreement and fully cooperated, and agreed to dismiss the remaining counts against Riojas at sentencing.  The Plea Agreement set  forth the penalty for the offenses to which Riojas agreed to plead guilty as follows:

2.   The penalty for a violation of Title 21 United States Code, §§841(a)(1), 841(b)(1)(B), includes a term of imprisonment of a mandatory minimum five (5) years to [f]orty (40) years, a fine of $2 million dollars and a period of supervised release of at least four (4) years.  The penalty for a violation of Title 18, United States Code   § 1956(h) includes a term of imprisonment of not more than twenty (20) years, a fine not to exceed $500,00 or twice the value of the property involved in the transaction and a supervised release term not more than three (3) years.  The defendant is not eligible for parole.  (Document No. 2697).

Also, with respect to the calculation of sentence, and waiver of right of appeal, the Plea Agreement

states:

8.  The defendant is aware that her sentence will be imposed in accordance with the *Sentencing Guidelines and Policy Statements*.  The defendant nonetheless acknowledges and agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense to which the defendant pleads guilty.  The defendant understands that the sentence to be imposed is discretionary with the sentencing judge and further understands that if the judge imposes a sentence up to the maximum established by statute, the defendant cannot for that reason alone, withdraw her guilty plea and will remain bound by all the obligations of this agreement.

9.  The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.  Knowing that, the defendant waives the right to appeal the sentence or the manner in which it is determined.

The agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(B).

10.  In agreeing to this waiver, the defendant is aware that a sentence has not yet been determined by the Court.  The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that the defendant may have received from the defendant's counsel, the United States or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court.  The United States does not make any promise or representation concerning what sentence the defendant will receive.  Realizing the uncertainty in estimating what sentence the defendant will ultimately receive, the defendant knowingly waives her right to appeal the sentence in exchange for the concessions made by the United States in this plea agreement.

11.  The United States reserves the right to carry out its responsibilities under guidelines sentencing.  Specifically, the United States reserves the right: (a) to bring

its version of the facts of this case including its file and any investigative files to the attention of the Probation Office in connection with that office's preparation of a presentence report; and (b) to dispute sentencing factors or facts material to sentencing; (c) to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office and (d) to file a pleading relating to these issues, in accordance with Section 6A1.2 of the *Sentencing Guidelines and Policy Statements.*

The defendant further understands that the guideline range under the Sentence Guideline is determined by the Probation Department Presentence Division and that determination is not part of this agreement. (Document No. 2697).

At Riojas' May 5, 1998, Rearraignment hearing, the Court engaged in an extended colloquy to ensure that Riojas had reviewed the written Plea Agreement, and had discussed it with her attorney, understood the charges against her, the maximum penalties, the rights she was waiving, including the right to appeal, the factual basis of the plea, and the manner in which her sentence would be calculated. (Document No. 2696, Transcript of Rearraignment Hearing, Document No. 5052). With respect to Riojas' understanding of the plea agreement including the waiver of her right of appeal, the maximum penalties, and the calculation of her sentence, the following exchanges took place between Riojas and the Court regarding Riojas' understanding of the plea agreement:

Ms. Newman: Yes, your Honor. The Defendant will plead guilty to counts 126 and [5] of the indictment and cooperate fully, as stated in the Plea Agreement, with the United States.

The United States reserves the right to file a 5K1.1 motion based upon substantial assistance should the United States in its sole discretion and judgment determine that such a motion is appropriate, and reserves the right to make sentencing recommendations it deems appropriate.

The defendant waives the right to appeal the sentence imposed for any reason, including but not limited to the United States not filing a 5K1.1 motion. Should the United States not file a 5K1.1 motion, or the court deny the motion, the defendant cannot withdraw her guilty plea. Should the defendant fail to complete the cooperation agreement, the United States may, at its option, move the court to set aside the guilty plea and reinstate the prosecution.

4

The Government will move to dismiss the remaining counts applicable to the defendant in the indictment following sentencing and the defendant abiding by the conditions of the agreement.  The defendant agrees to forfeit any interest she may have in the properties listed in the indictment.

The Court: All right.  Mrs. Riojas, does that sound like a fair summary of the written plea agreement that you propose to enter into this afternoon?

The Defendant: Yes, Ma'am.

The Court: Have you had an opportunity to read and discuss with Mr. Laird your written plea agreement?

The Defendant: Yes, Ma'am, I did.

The Court: Do you understand the agreement?

The Defendant: Yes, Ma'am, I do.

The Court: Do you have any questions about anything that you'd like to ask at this time?

The Defendant: No, Ma'am, I don't.

The Court: Mr. Laird, do you feel that she understands the plea agreement?

The Defendant: Yes, Judge.

***

The Court: So I want to be sure that you understand that unlike in state court where I have heard that judges oftentimes will simply follow the recommendation of the prosecutor without more – in other words, the prosecutor recommends something and the judge will just sort of rubber stamp that.  But that's not the way it is in federal court.  The judge looks at recommendations, looks at motions independently, and makes an independent determination of whether the judge believes that they have any merit.  Do you understand that?

The Defendant: Yes, Ma'am, I do.

***

The Court: All right.  You have indicated that you wish to plead guilty to count 126, which is possession with intent to distribute, and the penalty for that is imprisonment for a mandatory minimum of five years, up to forty years, and/or a fine of up to $2 million, and supervised release of at least four years.

For count five, the conspiracy to launder money, monetary instruments count, the penalty is imprisonment of up to 20 years, a fine of up to $5000,000 or twice the value of the property involved in the transaction, the money laundering transaction, and supervised release of not more than three years.

***

So you understand those are the maximum possible penalties you're facing as a result of your plea of guilty this afternoon?

The Defendant: Yes, Ma'am, I do.

The Court: I need to also mention the fact that for count 126 there is a mandatory minimum of five years.  And the way the mandatory minimum works, the Congress has enacted statutes for certain crimes, particularly drug trafficking crimes, that require the court to impose a sentence that is of a certain period.  And for your particular crime it would be a mandatory minimum of five years.  So no matter what the guidelines say in your case, the court would be under an obligation, pursuant to the mandatory minimum statute, to impose at least five years for that particular count.

Do you understand that's how that works?

The Defendant: Yes, Ma'am, I do.

The Court: All right.  Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow to determine what a sentence will be in a criminal case.

Have you and Mr. Laird talked about how the guidelines may apply in your case?

The Defendant: Yes, Ma'am.

The Court: And you understand that I won't be able to determine what your sentence will be in this case until after a probation officer has done an independent investigation, has written a report, and has submitted the report to you and your attorney and also to the Government and to me.  You understand that?

The Defendant: Yes, Ma'am.

The Court: And after you have gotten a copy of the report you will be given an opportunity to file any objections you may have to that report, and that we will then have a sentencing hearing. At that hearing I will address any objections you and your attorney may have, or the Government may have. I will also address any motions that the Government may file or that you may file. I will also consider any recommendations that the government files or that you and your attorney may make. And I will, in general, just simply take a look at all of the factors that are involved in what sentence I give you. Primarily, of course, it's the report, but, also, any objections or motions or recommendations that are made.

And I will also listen to what you have to say and listen to what your lawyer has to say and also the Government's lawyer. And after we finish that hearing, I will then make a determination of how the guidelines apply in your case and what your guideline range is, and then make a determination of what your sentence is. Do you understand that's how that works?

The Defendant: Yes, Ma'am, I do.

The Court: So you understand I have no idea right now what your sentence will be in this case. Do you understand that?

The Defendant: Yes, Ma'am.

The Court: And do you understand that if the sentence that I come down with is more severe than the sentence than you expect — in other words, I'm sure you and Mr. Laird have talked about how the guidelines apply and you've kind of made an estimate of what you think you're going to get in this case, but it may be, after this hearing, after the probation officer's report is in and after I've had the hearing, I may make a determination that your sentence is more severe than the one you're expecting right now. I want to be sure that you understand that if – that if at the time of sentencing I do make a determination that your sentence is more severe than you expect, you will not be given an opportunity to withdraw your plea of guilty at that time.

Do you understand that?

The Defendant: Yes, Ma'am.

***

The Court: And do you understand that by entering into this written plea agreement, that you will have given up or waived your right to appeal any sentence that I impose? Do you understand that?

The Defendant: Yes, Ma'am.

***

The Court: All right.  I'll ask you now, Ms. Newman, to tell me what it is the Government is prepared to prove if we went to trial in this case.

Ms. Newman: Yes, your Honor.  The United States of America and the Defendant, Virginia Riojas, agree that the Government's proof at trial would include, among other facts, the following agreed upon facts, including but not limited to the following:

At various times within the time frame of count one of the indictment, January 1986 through September of 1996, within the Southern District of Texas and elsewhere, the defendant, Virginia Riojas, knowingly and intentionally assisted various members and associates of the Moreno/Riojas marijuana trafficking organization, including but not limited to Alvaro Riojas, the Defendant's husband, who is Ramiro Riojas, Renato Riojas, Armando Pena, Julio Pena, Federico Perez, Jr., also known as Lico, Federico Perez III, Herberto Perez, Zaragosa Sandoval, Herbert Ross Watkins, and others.

The Defendant, Virginia Riojas, obtained and relayed information to members and associates of this organization concerning, among other things, the location of law enforcement surveillance, the location and ongoing status of participating coconspirators and their ongoing marijuana trafficking activities, and advice on how participants should proceed in order to avoid law enforcement detection.

Examples of the defendant's intentional participation in this marijuana trafficking organization include but are not limited to the following:

On or about and between October 11, 1994, through October 14, 1994, the defendant, Virginia Riojas, knowingly and intentionally assisted her husband, Ramiro Riojas and others, in coordinating a marijuana shipment from Starr County to Houston, Texas.  Title III intercepted telephone calls revealed Virginia Riojas' participation in monitoring the status of that marijuana deal.

On October 12, 1994, at 1:49 p.m. coconspirator Julio Pena called and told defendant Virginia Riojas he was running late and was leaving at 2:00 p.m.

On October 12, 1994, at 1:52 p.m. defendant Virginia Riojas told coconspirator Ramiro Riojas that Julio Pena was leaving at 2:00 p.m.

8

On October 12, 1994, at 6:00 p.m., coconspirator Zaragosa Sandoval called Virginia Riojas looking for Ramiro Riojas. Defendant Virginia Riojas said that Ramiro went to Fronton to look for his man.

On October 12, 1994, at 8:36 p.m. Annie called for Ramiro Riojas. Defendant Virginia Riojas said that he was not here. Annie advised Virginia Riojas to tell Ramiro that the narcotics agents were out by Uncle Bobby's ranch. A reference to coconspirator Robert Riojas.

On October 12, 1994, at 8:40 p.m. the defendant, Virginia Riojas, advised Ramiro Riojas that the narcotics agents were out by Robert's property; that is, Roberto Riojas.

On October 14, 1994, at 12:29 p.m., Ramiro Riojas advised his mother that it was fine, thank god. If not, we would have been in the streets; but thank god everything arrived. Ramiro said that Annie called and advised him about the narcotics agents and Virginia had called him. The reference to Virginia is the defendant.

Additional Title III intercepted conversations revealed that on January 9, 1995, at 6:42 p.m. Ramiro called Federico Perez III, also known as Fred, on a mobile phone. Fred said they are on their way. Fred also indicated they were going a different way because the Border Patrol was out.

At 10:09 p.m. Federico Perez, Jr., also known as Lico, reported that there were 325 rather than the 300 Julio Pena said. He continued telling Fred it got out all right.

On January 10, 1995, at approximately 8:20 p.m. Federico Perez III and Herbert Ross Watkins checked into the Budget Inn, in Richmond, Texas. One of the registration cards listed license plate number KZ8542 as the license plate of the vehicle. Agents located two vehicles in the parking lot, one of which was a vehicle with that license plate. It was described as a white pool truck outfitted with red headache racks.

At 12:15 a.m. on the next day, January 11, 1995, a canine unit alerted to that vehicle bearing that license plate. At approximately 4:00 a.m. both vehicles departed the Budget Inn, traveling together. Federico Perez III and Ismael Guerra, Jr. were identified in the vehicle. The trucks split directions and agents continued to follow the vehicle which the canine unit alerted and observed it enter the Ramiro Riojas ranch and park in the garage. Agents proceeded to a convenience store in the area, which resulted in Renato Riojas calling Ramiro Riojas and relaying that information. Ramiro Riojas and the defendant Virginia Riojas then called an advisor named "Alta" who advised them on which course of action they should take to avoid law enforcement scrutiny.

In reference to the money laundering conspiracy, the defendant, Virginia Riojas, in addition to the above evidence, the defendant, Virginia Riojas, knowingly and intentionally allowed the below-referenced property specified in the indictment to be placed in her name to avoid detection of and to conceal the illicit drug proceeds which were the source of payment for the properties and to conceal the true ownership of the properties. Properties numbers 17, 18, 19, 20, 31, 32, 34(A)1, 34(A)2, 34(A)3, and 41. In addition, properties numbers 17, 18, 19 and 20 are where Virginia Riojas and Ramiro Riojas' residential home was built. The defendant agrees that meetings were held there to plan for the distribution of marijuana, and proceeds from the sale of marijuana were delivered to that property. Properties numbers 34(A)1, (A)2, and (A)3 and 41 were also used for marijuana trafficking meetings and were the locations where vehicles containing marijuana were stored.

The Court: Mrs. Riojas, can you tell me in your own words what it is you did.

The Defendant: I would translate messages to my husband. That's about it.

The Court: About?

The Defendant: What they would call and tell me to them.

The Court: What was the subject of the conversation?

The Defendant: I don't recall on those days.

The Court: Well, was it drug – about distributing the marijuana and getting the money back?

The Defendant: I don't recall on those days.

The Court: Well, was it drug – about distributing the marijuana and getting the money back?

The Defendant: No, Ma'am. I can't recall the day that it would be that. Like Julio Pena, that, I'm not sure what it would be about.

***

The Court: Well, I'm not asking you about what Ms. Newman read to you. I'm asking you, in your own words, I want you to tell me what you did. You're pleading guilty to two counts of this indictment.

The Defendant: Yes, Ma'am.

10

The Court: I want to know, I want you to tell me, what it is you did that prompts you to – what's the basis of this plea, in your own words.

The Defendant: I knew what my husband was doing by my husband, what he would tell me.

The Court: And what was he doing?

The Defendant: Dealing the drugs.

***

The Court: All right.  So you knew your husband was dealing in drugs?

The Defendant: Somewhat.  Yes, Ma'am.

The Court: And were you helping him in some way?

The Defendant: No, Ma'am.  But by phone calls.  That's about it.  Just relating the messages that they would call me and I would just call him and let him know what they said.

The Court: All right.  And you knew that those phone calls had something to do with dealing in drugs?

The Defendant: Some phone calls, yes, Ma'am.

The Court: And what about the money laundering part?  What was the – all the properties?  Can you tell me what you did with reference to the property?

The Defendant: What is it?

Mr. Laird: Where your husband had you put the properties in your name and under the kid's names?  Is that correct?

The Defendant: Yes, Ma'am.

Mr. Laird: Some of the ranches and some of the home properties?

The Defendant: Yes.

The Court: And you bought those properties with what?  What did you use to pay for those properties?

11

The Defendant: My husband deal[t] with all of that.  I wouldn't deal with none of it, so I wouldn't know.

Mr. Laird: But it came from drug money?

The Defendant: It had to come from drug money. It had to.

The Court: You knew that the money was drug money?

The Defendant: Yes, Ma'am.  (Document No. 5052, pp. 4-6, 8-9, 11-14, 18-25)

Prior to sentencing, a Pre-sentence Investigation Report ("PSR") was prepared (Document No. 4695, and Addendum, Document No. 4797), to which Riojas filed written objections.[2] (Document No. 4741, 4866).  Pursuant to the PSR, Riojas' sentence was calculated as follows:  (1) In calculating Riojas' base offense level, because Riojas  was held accountable for 7,486  kilograms of marijuana, U.S.S.G. § 2D1.1 directed a base offense 34.[3]  (2) Because Riojas was a minor participant, pursuant

----

[2]  Riojas objected her to depiction in the PSR as being a minor participant in the drug trafficking organization.  According to Riojas, her role was more akin to a glorified secretary.  As such, Riojas argued that pursuant to U.S.S.G. § 3B1.2(a) she was a minimal participant.  In addition, Riojas objected to the drug quantities and drug proceeds for which she was held accountable, PSR ¶ 18, 22, 29, 30, 31, 32, 34, 36, 37, 38, 39, 43, 44, 45, 46, 48, 50, 51, 52, 53, 54, 58, 60, 61, 62, 66, 67, 68, 70, 69, and 72.  According to Riojas, she should not be held accountable for any acts at the ranch house property after November 9, 1993, and as a result, should not be held accountable for the total delivery of 6,003.7 pounds of marijuana, $144,000 in payments and $14,400 paid in driver's fees.  Riojas argued that the drug quantity she should be accountable for sentencing purposes was 1,248.17 kilograms, and that her base offense level should be 32.
    Riojas further objected to the failure of the probation officer to give her a reduction under U.S.S.G. § 2D1.1(b)(6), and for failing to give her a reduction for acceptance of responsibility. (Document Nos. 4741, 4866).

[3]  Riojas' relevant conduct was described in the PSR, paragraphs ¶¶ 16-72.  (Document No. 4695).  The information was obtained by the probation officer from interviews with case agents, the investigative reports, document review, Title III interceptions, and the debriefings of cooperating individuals.  Overall, Riojas' involvement was summarized as follows:
    In summary, Virginia Riojas is deemed to have occupied a minor role in the offense.
    She is held accountable for the 16,503.7 pounds or 7,486 kilograms of marijuana and
    the laundering of $730,800.  (Document No. 4695, ¶ 72).

to U.S.S.G. § 3B1.2(b), Riojas' base offense level was decreased by two levels.  (3) Because Riojas denied her relevant conduct and because she attempted to obstruct justice by providing materially false information regarding the San Julian Ranch, pursuant to U.S.S.G. § 3C1.1, Riojas' offense level was increased by two levels.  (4) With an adjusted base offense level of 34, and with a criminal history of category 1, Riojas had a guideline sentencing range of 151 to 188 months.[4]  (Document No. 4695, 4797).

Riojas was sentenced on June 21, 2002.  (Document No. 4867, Transcript of Sentencing Hearing, Document No. 5081).  The record shows that Judge Harmon considered and  rejected all of Riojas' objections to the PSR, as follows:

> The Court: Mr. Laird has filed a number of objections to the report, and I'm going to be dealing with those in just a moment, but I want to find out from you if you have any other additional objections to the presentence report that you'd like to tell me about at this time that Mr. Laird hasn't made.
>
> The Defendant: He basically said everything.
>
> The Court: He said everything in his objections?
>
> The Court: Yes, Ma'am.
>
> ***
>
> The Court: All right. With the exception of the supplemental information that the Government supplied that the probation officer had no quarrel with, which were adopted via the same addendum, I am going to overrule all objections made by both the Government and the defense, and I adopt the findings of the presentence report

---

[4] According to the PSR, Riojas was not given a reduction under U.S.S.G. § 2D1.1(b)(6), and did not qualify for the "safety valve" because even though Riojas debriefed, agents stated that Riojas had not been entirely truthful and had not provided all information and evidence she had concerning the offenses charged in the indictment.  In addition, Riojas was not awarded a sentencing adjustment for acceptance of responsibility because Riojas' statement minimized her participation in the conspiracy.  (Document No. 4797).

and the addendum – addenda to the presentence report as my own, both the findings of fact and the application of the guidelines to the facts.

I find a total offense level of 34, criminal history of category I, which gives a guideline range of 151 to 188 months.

Mr. Laird, is there anything you would like to say before I pronounce sentence?

Mr. Laird: Judge, no. You've covered everything in your order. You've basically– I mean, anything that I would say would be a reiteration of what we've already asked for. The only thing – and I know you've overruled the objections, but the only thing I wish the Court would either consider or visit is the safety valve factor that she had asked for and also her statement of responsibility.

If I have made it unclear in helping her write the statement of responsibility or in the way I've argued the motion itself, what I tried to say was, in her mind she did things that her husband told her to do and helped him in that regard. In that regard, she was absolutely responsible, and she knows that. But as far as dealing with the other drug dealers or packaging or storing or things of that of her own nature, she did not do that. I think the probation department addressed that in their conversation of her role as a minor participant.

But I do think, and if it would help the Court any, I have my notes from the 1999 debriefing, the 19 pages that we had prepared as a result of the debriefing where she told the Government everything that she knew about, her involvement in the case and names of people that she knew and how she would have known them as far as assisting the Government. And even though that may not qualify in the Government's mind for a 5K1, in her mind it qualified as far as being able to provide whatever substantial assistance she could. So in that regard, she does satisfy the fifth prong which would give her a two-point reduction that we had asked for under the circumstances. Past that, I don't think there would be else that I could add that the Court hasn't already seen in writing.

The Court: Anything you want to add? Would you like to respond to that?

Ms. Lombardino: Your Honor, other than to say that she did not meet the fifth prong from my discussions with Mr. Clark and the agents – I did not conduct the interview – that she minimized her involvement and wasn't overall, truthful in the things that she told them at the interview. Mr. Clark can confirm that, I believe.

Mr. Clark: We deferred by not filing a 5K, your Honor. However, the bottom of the guidelines, I think it addresses the issues that need to be addressed in this matter.

***

The Defendant: I can't even talk – to Mr. Clark.  It was recent after my daughter's death.  I thought I was ready for it, but I wasn't.  I wasn't.  I can't remember a lot of things because, after my daughter's death, it took a lot away from me.  I don't remember some things.  I think if they helped me refresh my memory about things, I would have appreciated it, but I didn't get any.  That's why maybe I didn't help y'all out enough in that.

Mr. Laird: I think the Court knows that date and times and stuff that we've put into the documents about Vanessa's death.

The Court: Right.

Mr. Laird: So, again, I think that goes part and parcel to her asking for the safety valve consideration from the Court only because of the kind of things that she was trying to tell me.  And I guess, to some limited degree, Judge, the fact that when she gave her statement of acceptance of responsibility in January, it was at that time that she started remembering, started talking about things that she had never told me before.  So, to whatever extent that would make a difference to the Court, based upon her words here today, I would ask the Court to reconsider.  (Document No. 5081).

The Court sentenced Riojas to a term of imprisonment of 151 months on count 5, and 151 months on count 126, the terms to be served concurrent, and to a 4 year term of supervised release on count 126 and a 3 year term of supervised release on count 5, with the terms of supervised release to run concurrent.  Also, the Court imposed a special assessment of $150.  (Document No. 4867, Transcript of Sentencing Hearing, Document No. 5081, pp. 10-12).  Upon motion by the Government, the Court dismissed the remaining counts against Riojas.  Also, the Court entered a final order of forfeiture of Riojas' interest in properties.  (Document No. 4868).  Judgment was entered on June 27, 2002.  (Document No. 4875).

Riojas appealed her conviction and sentence to the Fifth Circuit Court of Appeals.  In connection with her appeal, counsel filed an *Anders* brief and moved to withdraw.  Riojas responded and argued that she should have been given a mitigating role adjustment under U.S.S.G. § 3B1.2,

that the Court made other errors in calculating her sentence, and that the evidence was insufficient to link her to the drug offense for which she was convicted.  The Fifth Circuit Court of Appeals entered a *per curiam* unpublished opinion affirming Riojas' conviction and sentence and dismissed the appeal as frivolous on August 20, 2003.  (Document No. 5189, 5190).  The Fifth Circuit wrote:

> Our independent review of the brief, the record, and Riojas' response discloses no nonfrivolous issue for appeal.  Riojas waived the right to appeal her sentence, without exception.  The sentencing issues she asserts are waived.  *See United States v. Melacon*, 972 F.2d 566, 567 (5th Cir. 1992).  Riojas' knowing and voluntary guilty plea waived any argument that the evidence was insufficient to connect her with the offense.  *See Nobles v. Beto*, 439 F.2d 1001, 1002 n.1 (5th Cir. 1971).  (Document No. 5190).

Because Riojas did not file a petition for writ of certiorari with the United States Supreme Court, her conviction became final upon the expiration of the deadline to file such a petition, or November 18, 2003.  On February 23, 2004, within one year of her conviction being final, Riojas timely filed a § 2255 Motion to Vacate, Set Aside, or Correct Sentence. (Document No.5265).  Riojas raises the following grounds for review:

> (1) her waiver of her right to appeal cannot be enforced where the sentence imposed upon her was illegal;
>
> (2) counsel was ineffective for not opposing the imposition of sentence and pursuing the imposition on appeal;
>
> (3) counsel was ineffective for failing to argue that U.S.S.G. § 3C1.1 should not be applied;
>
> (4) counsel was ineffective for not appealing the district court's finding that Riojas was a minor participant;
>
> (5) the Court erred in denying Riojas the safety-valve reduction; and
>
> (6) the Court erred in denying Riojas a reduction for acceptance of responsibility.

In response, the Government has filed a Motion for Summary Judgment (Document No. 5295).

16

## III. Discussion

### A. Sentencing Error Claims

The Government argues that Riojas' claims related to the application of the United States Sentencing Guidelines were raised and decided on direct appeal, and therefore, Riojas is precluded from relitigating the claims in this § 2255 proceeding.

Claims that have been raised and considered on appeal cannot be relitigated in § 2255 proceeding. *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions."), *cert denied*, 476 U.S. 1118 (1986); see also *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997). Riojas' argument concerning her illegal sentence, which she contends invalidates her appeal waiver, denial of the safety-valve reduction, and denial of acceptance of responsibility were raised by Riojas *pro se* following her counsel's filing of an *Anders* brief, and were rejected by the Fifth Circuit. Such complaints cannot be relitigated in this § 2255 proceeding.

Moreover, even assuming that the Fifth Circuit had not considered the claims raised herein by Riojas, upon this record, Riojas would not be entitled to relief. With respect to Riojas' challenge to the voluntariness of her plea, "[s]olemn declarations in open court carry a presumption of verity, forming a formidable barrier in any subsequent collateral proceeding." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). Upon this record, Riojas' plea was knowing and voluntary. According to Riojas, she reviewed the written Plea Agreement, understood the charges, the rights she was waiving, the penalties and the manner in which her sentence would be calculated.

As for Riojas' claims, which are based on the District Court's application of the United States Sentencing Guidelines, such claims are not cognizable under 28 U.S.C. § 2255. *United States v. Payne*, 99 F.3d 1273, 1281-82 (5th Cir. 1996) ("A district court's technical application of the Guidelines does not give rise to a constitutional issue."); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995) ("A district court's calculation under or application of the sentencing guidelines standing alone is not the type of error cognizable under section 2255."), *cert. denied*, 516 U.S. 1165 (1996); *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding .... A district court's technical application of the [Sentencing] Guidelines does not give rise to a constitutional issue.") (citations omitted). Finally, even if the sentencing error claims Riojas raises herein were cognizable in this § 2255 proceeding, no relief would be available on the merits of the claims. There is nothing in this record which undermines the District Court's calculation of Riojas' sentence under the Sentencing Guidelines.[5]

---

[5] To the extent that Riojas' claim concerning the determination of drug quantity and sentencing enhancements by the Court could be construed as a claim that her sentence is contrary to the holdings of the United States Supreme Court in *Blakely v. Washington*, 542 U.S. 296, 524 S.Ct. 2531 (2004) and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), her claims fails because neither *Blakely* nor *Booker* apply retrospectively to cases on initial collateral review. *See United States v. Gentry*, 432 F.3d 600 (5th Cir. 2005).

### B.  Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had.  *Strickland*, 466 U.S. at 687.  Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable.  *Id*. at 687-88.  The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable.  *Id*. at 694-95.  Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief.  The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong.  *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy."  *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*).  To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Under the prejudice prong of *Strickland,* a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Id*. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied,* 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland,* 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). In addition, conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

With respect to guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Thus, Riojas "must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Id.* As to the specific examples of ineffective assistance of counsel which Riojas cites to in support of her ineffectiveness claims, such as that counsel failed to oppose the imposition of sentence and to pursue the issue on appeal (ground two), failed to argue that U.S.S.G. § 3C1.1 (Obstructing or Impeding the Administration of Justice) should not be applied to Riojas (ground three), and that counsel failed to appeal Riojas' designation as a minor participant (ground four), the record shows

20

that counsel made the arguments urged by Riojas in his written objections to the PSR, and at sentencing, and given Riojas' waiver of her right to appeal, did not error in not raising these issues on appeal.  Riojas has cited no legal authority or viable argument, which had not been previously raised, to support her argument that the Court erred in its calculation of her guideline sentence.  Here, the record either affirmatively shows that Riojas' counsel was not deficient or there is no evidence that the alleged errors prejudiced Riojas within the meaning of *Strickland.*

In sum, Riojas has failed to demonstrate that her guilty plea was not knowing, voluntary, and intelligent, and has likewise failed to overcome the presumption under *Strickland* that "counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689.  (quotations omitted).

## V.  Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED, that Movant's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 5265) be DENIED, and that the Government's  Motion for Summary Judgment (Document No. 5375) be GRANTED, and that this § 2255 proceeding be DISMISSED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir.

21

1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this  5th  day of  May, 2006.

Frances H. Stacy
United States Magistrate Judge